Good morning, Your Honor. Tony Farmani on behalf of Mr. Gabriel Barrios. Your Honor, this case presents two interrelated issues, each of which has its own unique standard of review. Now, the State has conceded with regard to the involuntary plea claim that AEDPA does not apply. It's a de novo review by this Court. On the IAC claim, the ineffective assistance of counsel claim, AEDPA does apply. What I'm going to be doing, I'm going to be discussing the circumstances regarding both claims, but I do want the Court to note that if it indeed found under de novo review that the involuntary plea claim here is valid, then necessarily he received ineffective assistance of counsel, Mr. Barrios. Now, what makes this case really interesting is that Mr. Barrios, at age 29, his counsel tells him to plead guilty to all the offenses, all the charges, all the allegations the State asserted against him, opening himself to a 70 years to life sentence. Meanwhile, Mr. Barrios is telling his counsel that I have plausible defenses, I have actual defenses to these charges. Nevertheless, his counsel tells him, you know, I've talked to the judge, I know the judge here really well, keep in mind that he's guilty. Now, where does it say in the documents from Mr. Barrios precisely what you say? I've talked to the judge, I know the judge really well. In his declaration, Your Honor, that was submitted to the State court during the habeas review, during the habeas collateral review in State court, in all his declarations and ---- Where does he say I have talked to the judge? The ---- he doesn't ---- I apologize. I may have misrepresented what it is. He doesn't say that. I mean, I looked for those words. Right. He doesn't say exactly those words. What he does say, the counsel, what he does tell him is that he comes in and meets with him in the jail cell and says, look, I know this judge. Now, keep in mind that the counsel had been practicing since 1969, and this is 2004. He's been practicing criminal laws all that time. So presumably he doesn't ---- I understand that part, but I wanted to make sure we have clear, as to what Mr. Barrios says, his attorney said to him. And as I read the declarations, he said that his counsel, Mr. Young, said to him, I know this judge, this judge sets aside, always sets aside priors and he will do so for you. That's correct, Your Honor. But I did not see anything where he says I have talked to the judge. No, that is true, Your Honor. Okay. But, you know, you ---- actually, the point to be made here is that there are two separate inquiries. One would be the subjective part, what Mr. Barrios was actually thinking. And he had every right to rely on his counsel's representations, whether they be ---- But it's only a prediction, isn't it? It's not a representation in the formal sense, is it? It isn't an actual ---- he doesn't actually tell him an actual sentence he was going to receive. You're correct about that, Your Honor. But he does misrepresent him. He does tell him that his prior strikes would be stricken. I mean, there is absolutely no other reason why Mr. Barrios would even plead guilty to all the charges. Why would he do something like that? In fact, he wasn't even subject to 70 years to life. The State conceded before sentencing that the felony possession of a firearm charge would be 654, which means essentially that it would be a State sentence. The judge would not be ---- under the California law, the judge would not be permitted to impose a separate sentence for the felony possession of a firearm charge. So in actuality, his sentence would have been only 45 years to life, which brings this case in line with Aiea v. Son, where the counsel told the petitioner in that case that you're subject to the mandatory minimum, while, in fact, the petitioner in that case was not subject to the mandatory minimum. So in this case, what you have is you have a person who goes in, you have a counsel who goes into my client and says you're subject to 70 years to life, you're guaranteed to get that unless you plead guilty. If you plead guilty, the judge is going to strike your priors. And I know that. What's missing in this case, or one of the things that's missing in this case is, of course, Mr. Young. And I know that both prior lawyers and you have tried very hard to contact him. That's correct, Your Honor. If there were to be an evidentiary hearing as to what was actually said by Mr. Young, I assume he would be subject to subpoena? He would be under ---- if there would be an evidentiary hearing back in district court, he would be, Your Honor. If there were to be such a hearing. That's correct, Your Honor. In fact, the district court has reserved the ruling on that very issue pending decision by this court. So I, you know, I tried very hard to get Mr. Young to cooperate, and he simply failed to do so. He failed to do so back in 2005 by the point of the appellate counsel in the state court proceedings. And he failed to do so now. In fact, I filed a request for judicial notice advising the court about Mr. Young's history. I mean, he's, that's what he does. This is his modus operandi. He charges people money, but he does virtually nothing for them. And that's essentially what he did for Mr. Barrios in this case. Well, the papers he filed asking for striking of the priors. That's right. Actually, I read those. Those papers were decent. They were. He doesn't actually show up at the sentencing hearing. He sends an associate, and then he won't answer the phone when things go wrong. But the papers he filed weren't bad. No, they were not. But they were late. They were done at sentencing. And they were done without the benefit of any real evidence supporting it. I mean, the allegations were Mr. Barrios' allegations, which to this day remain undisputed. However, he didn't, what he did was he waited until the actual day of the sentencing. And interestingly enough, at sentencing, prior to Mr. Barrios even knowing the judge was going to actually sentence him, he had an actual conflict because his brother represented Mr. Barrios back in 1996 in a burglary preliminary hearing. I mean, I would ask this court to put yourself in the judge's position. At that point, I think the judge would have a real difficult time, particularly a state court judge, would have a real difficult time reversing or granting Mr. Barrios' relief because he would be subject to criticism saying, you did this because your brother represented him back in 1996. That's why you did it. So he was sort of, the judge over here was careful, no doubt about it. He did disclose the conflict. But Mr. Barrios hadn't even signed up. He hadn't even signed up on the actual conflict until it was brought up to him at sentencing. And all that time he's operating under this mistaken belief that his strikes are going to be stricken. And for a good reason. If you look at his priors, if you look at the kind of person he was, this is a man who at age of 19 committed a robbery. What did he do? He robbed a pizza man. That's what he did. He didn't use any weapons. He was essentially bystander. His co-defendant had a knife on him, but no weapons were used. So he gets one year jail time and three years probation. While on probation he does commit another crime. But what was the crime? What was the nature of that crime? He goes in to steal a Nintendo for his sister at age 20 in a house that was empty. No one was there. No one was at that house. They were on vacation. He knows they were on vacation. The Nintendo was recovered. And the first crime on the pizza, what did he steal? Just the pizza? No, he stole the money from the pizza place. And then the second time around he steals the Nintendo, which is later recovered. He gets sentenced nine years. And he spends seven and a half years in prison. Gets credit for time served. Comes out. He's crime free for two and a half years. Has a daughter. The point I'm trying to make, Your Honor, is that at that time in 2004, when he committed this supposed armed robbery, again, keep in mind, I'm only using armed robbery. I'm not conceding it was armed robbery because he does have viable defenses. I know he contends it was a scam. It was a setup. That's correct, Your Honor. In fact, the risk manager of Del Taco had wanted to investigate this further and had encouraged counsel to investigate it further, but counsel failed to do so. What did he do in the state? Is it true that in terms of the voluntariness of the plea claim, that claim wasn't raised until his petition for review in the California Supreme Court? That's correct, Your Honor. So, in effect, when he had the opportunity in the state court, he did nothing to develop the record on the voluntariness issue. He did, Your Honor. In fact, he did. What did he do? If he didn't raise it at the trial court level. He raised it in trial court level in a motion for, well, let me put this in a different light for you, Your Honor. The two claims, the IAC, as I stated earlier, and the involuntary plea claim, they are so interrelated that one has to go with the other. The counsel, Mr. Califf, who is his appellate counsel in the state court, he did. He did everything he could to be able to get Mr. Young, trial counsel, to cooperate and provide a declaration. But that was with a – there's – these things, you're right, they overlap, but they're also arguably separate. We could find that there was no ineffective assistance of counsel, and yet the plea could be involuntary. You could, in this case, particularly because one has a very low standard of review, relatively speaking. One is EPA, the other one is just simply de novo. And under de novo review, I don't think there's any question here that he guiltily was involuntary. Thank you, Mr. Forman. You've consumed all your time. I understand, Your Honor. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court, Deputy Attorney General Eric Reynolds for responding. Could I ask you, is it – and I'm not familiar with the practice here, but is it part of the practice to plea bargain away strikes? I'm sorry? Is it part of the plea bargaining practice to bargain away strikes in a potential three-strike case? Let's say it is. Well, Your Honor, there wasn't a plea bargain in this case. I know, but that's one of the issues, the issues of what the alternative was. In other words, could he have attempted, instead of just an open plea, in which you take your chances on what the judge is going to do, could he have attempted to plea bargain, and given the nature of the two strikes, would you have plea bargained some of the strikes away? Isn't that a critical issue? Well, Your Honor, I don't believe that the prosecution would have offered a plea that would have bargained away the two strikes. There's no indication in the record that that would have occurred. Well, but you didn't answer – my actual question was, is it part of the plea bargaining practice to bargain away strikes in order to get a plea? To bargain away strikes, it wouldn't be on the prosecution's practice. I don't believe – I mean, it could happen. In other words, if he said, if you get rid of the second one of these two strikes, I'll plead guilty, you would have not accepted that plea. Well, the prosecution could in certain cases. There's no indication in this case that it would have, but conceivably it could. I understand, but it's important background to know that these things could be pleaded away. Sure. There was an alternative to simply pleading to everything without any effort to plea bargain away. Well, there's no – usually what would happen is the plea – the prosecution would offer a plea bargain such as that if there was an offer on the table. There's no indication in the record whatsoever that there was any kind of offer or consideration of that kind of offer. And based on the circumstances of the final time – There's no indication that there was a request for – let's enter into negotiations. What's that? The record's equally silent as to whether there was any request by Mr. Young, but let's talk about – let's have some negotiations. No, there's no – the record's silent on that. But what I would like to direct the Court's attention to, and it hasn't been addressed by either party, but there is a critical document that I discovered in Petitioner's excerpts of record where Petitioner himself rebuts all the claims he made in his declarations that he filed in state habeas. And this is found in the excerpts of record at pages 245 through 250. This was the notice of appeal and request for certificate of probable cause that was filed in the Superior Court after he was sentenced and before his appeal. And this was in 2005 that he filed this document. There's an affidavit attached to the document stating that everything within the notice is factually true. And Petitioner stated in that document – Excuse me. The ER record again? What page? Pages 245 through 250. And first I'm going to start on page 246 where Petitioner said, Defendant entered a plea in open court to robbery with the use of a gun. This was Defendant's third strike. The plea was entered without any promise of leniency. And then at 248, Petitioner states, Defendant was advised by counsel to enter a plea to a maximum sentence 70 years of life without any promise from the prosecutor or the court. He was led to believe there was no need to test the state's evidence because guilt was a fore-drawn conclusion and his only hope was to try and get a prior conviction struck. In this declaration or this affidavit and this notice of appeal that was filed in 2005, Petitioner said that his counsel came to him and said, There's no deal. There's no leniency. Your best hope is to try to get these priors struck by a Romero motion. I don't have that part of the record in front of me. Who prepared that for him? Who was representing him at that time? The document, by all indications, was prepared by Petitioner himself. The affidavit signed by Petitioner himself, there's no indication that there was an attorney that prepared it for him. It could have been prepared by his trial counsel. It could have been prepared by his lawyer.  It said in the declaration that any promise of leniency from the prosecutor or the court. It also said the plea was entered without any promise of leniency by anyone. Now, this document. Now, does it say by anyone or did you add the words by anyone? I said the plea was entered without any promise of leniency, period. And basically, so it doesn't say anyone. You know, he gills the lily, you gill the lily, don't do that. I apologize, Your Honor. I didn't intend to do that. But the document lays out several areas where he claims counsel was ineffective. He said the counsel didn't investigate, the counsel allowed him to enter a plea that didn't give him a bargain. But nowhere within the document does he say the counsel came to him, told him that the court promised that it would strike some strikes. If he's alleging all these instances of ineffective instances of counsel, of course he would allege that as well if that's indeed what occurred. Let me come back. I'm sorry. Go ahead. No, no, no. Please, Judge Carvin. He says Mr. Young assured me that Mr. Martinez, that Judge Martinez would strike my strikes. In that he... That he, Judge Martinez, did this for everyone. In his declaration that he filed later in habeas petitions, he says that. But back in 2005, he didn't make that claim whatsoever. It wasn't until later on when he filed his declarations on the habeas grounds that he then said this was a terrible offense. What's the date of the declaration that you're referring to, 245 to 250? It was filed in 2005. I believe, I don't, I'd have to look at it, turn to it to find the exact date. But it was shortly after his, it was about two months after he was sentenced that he filed it. Now... Let me ask you about the voluntariness of the plea question. I don't ask you to concede the truth of it. But if it were true that his lawyer Young had said to him, you will get your prior strikes struck by the court, so that the court will now sentence you based only on this crime, and you will get five years. So he just predicts that as a matter of absolute fact. This is what will happen. He says, if you go to trial, you are potentially subject to 70 years, which I think actually he was. Therefore, I recommend that you plead. If that is the case, was that plea knowingly involuntary? Again, I'm not conceding that happened at all. No, I don't ask you to concede. If it was a prediction of what would happen, no, it wouldn't make the plea involuntary. Well, it's necessarily a prediction of what's going to happen. Sure. But, because this is what's going to happen. But if he says to him, and I'll make it a little stronger, I guarantee to you that this is what has happened. You've hired me because I'm an expert. I'm a lawyer. I know this. I've done this for a very long time. I know this judge and his behavior. He will strike your priors, and you will be sentenced to five years. I'll start. Would that then be an involuntary plea? The record demonstrates that any notion that that's what would happen was refuted. No, no. I'm asking to assume that what I said is true. I'm not asking you to concede that it's true. Sure. And it would make the plea still not an involuntary plea because later on he was informed by the court. You know, you're getting back into the facts. I'm asking you to assume that what I told you is true. Right. And then later on the court dispels any notion that that would be true, making the plea involuntary. No, please. Let me make sure you and I are on the same page. He guarantees to him that this is what's going to happen. And then, of course, we go through the plea colloquy that we saw. It starts out with Judge Hunt, and then we get the prosecutor. I guess the prosecutor does it in state court sometimes because the judge doesn't know what's going on. But the prosecutor goes through all these questions about, you understand, there are no promises and da-da-da-da-da. And, of course, he says, as defendants do, yes, yes, yes, yes, I understand. Sure. But we know from not just our own experience, but we know even from decided cases, that that is not always conclusive because they're trained. Listen, if you're going to take the plea, you've got to say yes to all that stuff. Okay, so now, assuming that all of that is true, is this an involuntary plea? No, Your Honor. Because? Because going into what was done at the court level, by the court, I apologize. In order to answer the question, I feel like I need to get into the facts. Well, that part is true. If we're doing conceding, it's true. Of course I concede that. It's true. It's right there in the transcript. And the answer, I believe, is still involuntary because any notion that the prediction of what would occur was dispelled when he filed, when he went through the court and the court said, it is substantially likely that you will be sentenced to the maximum term of 70 years to life. Actually, the court didn't say that. Well, the prosecutor said. The prosecutor said. When he was taking the plea in the court, indicated it is substantially likely. And also on the waiver form that he filed in the court, he says, I understand, I am exposing myself to an open plea and exposing myself to 70 years to life. That does not appear to be his handwriting. He says he didn't write it. He signed it. He signed that document. He signed it. That's right. And so that dispels any prediction of success. And at that point, and I'll go on. When that Romero motion was filed, the petitioner was given an opportunity to argue to the court and urge the court why the strike should be stricken for his sentencing. And during that whole time, the petitioner never mentioned, my counsel came to me and told me that I would only get five years or my attorney made certain promises to me. He didn't act as someone who had the case in the bag. He acted as someone who was urging the court, based on his history, based on the crime, to dismiss the strikes. And, again, when the court didn't dismiss the strikes as to count one. Well, I don't know how intelligent he is, but it would have been a foolish thing to say, assuming all these allegations were true, was that judge, my lawyer, told me that you always, for example, you did this for everyone. You would always strike the strikes. At that point, it might have been. I mean, that would be foolish. But then when the court didn't strike the strikes, and then when the court sentenced him to 45 years to life, he then didn't all of a sudden say, wait a minute, I thought I was only going to get five years. I'd like to withdraw my plea, including two months later when he filed his notice of appeal and said, here's what I was told the deal was going to be, and I didn't get that deal, especially when he's making all these other allegations of ineffective assistance. Thank you, counsel. Your time has expired. No, I'd like to ask one more question. Go ahead, Judge. At some point in your brief, you say that either all or part of the involuntary plea has not been exhausted. Yes. Are you arguing that only an argument has not been exhausted, or are you arguing that the entire claim of no involuntary plea has been exhausted, has not been exhausted? As upon second review of that plea, our argument would be that the entire involuntary the claim that the plea was involuntary is unexhausted because it was presented to the Supreme Court in a posture that it could not review that claim. Let me read to you then the first page of the document you filed in the Federal District Court at line 12, number 5. The petition appears to be exhausted. Right. It sounds as though you've waived any exhaustion claim that you might or might not have had. I understand, Your Honor. Do you remember having written that? I did not handle the district court file, but that then taking back to the second part where counsel misadvised him of that maximum term, that wasn't raised in that petition for review at all, and we would argue then that that portion is unexhausted. Okay. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in Meta v. May I address one point that he made about the record? I know the answer to it, if I may. Well, normally we don't do this, counsel, but he did raise the 2005 declaration, which perhaps you should respond to, because that was not raised earlier. Your Honor, I just wanted the court to know that that declaration was prepared by Mr. Young. I have records supporting that. There's no question about that. He did it right after sentencing. He didn't know what to do. He was scrambling around. He prepared this request for a certificate of probable cause for appeal, which was handwrittenly denied by the judge. Very well. Thank you, Your Honor. Repeating myself, the case just argued will be submitted for decision.
judges: Korman, O'scannlain, Fletcher